UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIVIAN BEALE
  *Plaintiff*

v.                File No.<u>07-cv-7520</u>

MOUNT VERNON POLICE DEPARTMENT
  *Defendant*

<u>**JURY TRIAL DEMANDED**</u>

<u>**AMENDED COMPLAINT**</u>

COMES NOW, the Plaintiff, Vivian Beale, for a Complaint against the Defendant, Mount Vernon Police Department, states and alleges as follows:

*NATURE OF CLAIM*

1. This action is for declaratory and injunctive relief and for damages to redress the deprivation of rights secured to the plaintiff by the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq* ("ADA"), 42 U.S.C. §2000(e) *et seq.*("Title VII"), 42 U.S.C. § 1983 *et seq,* and the Fourteenth Amendment.

1

### JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 (4), 2201, 2202, and Title VII. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to 42 U.S.C. §§ 12101 et *seq* (ADA) 42 U.S.C. §2000(e) et *seq*.("Title VII), 42 U.S.C. § 1983 *et seq*, and the Fourteenth Amendment.

3. On July 6, 2007, plaintiff, who had filed a charge with EEOC based on sex discrimination and disability, was given her "Right to sue" (Exhibit 1, Original Complaint)

### PLAINTIFF

4. Plaintiff, Vivian Beale, is a female citizen of the United States who has suffered a disability which is deemed a major life activity.

### DEFENDANT

5. Defendant is Mount Vernon Police Department and is an employer within the meaning of 42 U.S.C. §§ 12101 et *seq* (ADA).

### STATEMENT OF CLAIM

6. Plaintiff was an employee of the Mount Vernon Police Department, county of Westchester, State of New York.

7. Plaintiff was diagnosed with breast cancer in 2002 and returned to work after four surgeries in April 2003 until she constructively retired in 2007.

8. After plaintiff's return in April 2003 she was assigned to a "desk job."

### STATEMENT OF CLAIM---ADA

9. Lt Barbara Duncan ("Duncan") consistently asked plaintiff when she was returning to full duty.

10. Plaintiff obtained a letter from her doctor, which necessitated light duties because of side effects.

11. Duncan then demanded another letter demanding a date when returning to full duty even though initial communication from her doctor could not give a firm dates because of side effects from chemotherapy and medication.

12. Duncan was advised by plaintiff that if she were to request another letter, plaintiff would file a discrimination complaint.

13. Plaintiff was subsequently transferred to patrol division with the alleged reason that the patrol division was short of personnel.

14. Patrol division was indeed short of personnel as per Deputy Chief Roland; however, personnel needed were those who were not on limited or light duty; however, no request made by Deputy Chief Roland to Duncan requiring the need for additional personnel

15. Duncan had three other personnel who could have been transferred since they had no physical restrictions and who could have been assigned to the "street."

*STATEMENT OF CLAIM---GENDER DISCRIMINATION AND/OR SEXUAL HARASSMENT*

16. Sgt. Podszus continually ridiculed the female genus from the time that plaintiff was assigned as one of his subordinates in 2006 citing some examples as follows:

    a. Sgt. Podszus in a conversation with Sgt Mandel referred to a woman lawyer as a bitch...while plaintiff sitting at a nearby desk

    b. The plaintiff overheard Podszus mumbling to himself that women are useless and do not belong on this job.

    c. Sgt. Podszus asked plaintiff in roll call room in front of entire squads acting in a very demeaning manner..."can you do some light housekeeping?"

d. When prisoner get outs of jail, the prisoner's valuables are retrieved from Sgt. Podszus' desk drawer.

(1). Plaintiff initially had no problem retrieving the valuables for the departing prisoner from Sgt. Podszus desk.

(2) Sgt. Podszus, continuing his harangue and harassment of the plaintiff felt it necessary to make the snide remark that if the plaintiff could go into his drawers, then Sgt. Podszuz felt that he had a right to go into plaintiff's drawers.

(3) Sexual comments and innuendos such as those made by Sgt. Podszuz should never be allowed in the workplace whether in jest or as a proposition.

e. Police Officer Kathleen Mitchell in a conversation with the plaintiff during calendar year 2006 that Sgt. Podszus has recently called her a F\_\_\_ Bobblehead with the purpose of humiliating Officer Mitchell .

f. Not only did Sgt. Podszus manifest his scorn of women; but Sgt. Podszuz promulgated and nurtured Officer Rella another male in the section by condoning gross and vile comments directed at the plaintiff with complete indifference .The comments made by Officer Rella were as follows:

(1) "What are you going to do when you retire...work on 1st Street," a reference to where female prostitutes work the streets.

(2) "Do not think boy friend would like that but you can give your boy friend half the money you make."

(3) "Let us try to break her down before she leaves!"

g. In June 2006 plaintiff spoke to Lt. Vincent Manzione, a supervisor of Sgt. Podszus and made him aware of Sgt Podszus hostile actions, which effort was futile.

h. Plaintiff also spoke to regarding Deputy Chief Roland, commander patrol division about the aforementioned comments to which Chief Roland responded that "you should be happy that you were leaving" in effect, trying to discourage plaintiff from filing a complaint.

*STATEMENT OF CLAIM---OVERTIME --- GENDER DISCRIMINATION AND/OR ADA*

17. Men were granted overtime.

18. Individuals who had disabilities were granted overtime.

19. Not being granted overtime is not a pay issue per se and is not applicable to, nor does it carry the same criteria as the Equal Pay Act, but is disparate treatment both under either the ADA and/or Title 7. The Equal Pay Act is solely based upon gender discrimination because of a pay differential. In the case at hand, the issue is not the pay rate, but solely the equitable and non discriminatory distribution of overtime hours.

20. Plaintiff requested and was denied overtime even though overtime was available and would not create a hardship for the City of Mount Vernon.

21. Plaintiff, however, was, indeed, <u>required</u> to perform overtime to be present for court matters on her day off.

22. Plaintiff was also <u>required</u> to work three "plug in" dates and three to five training days, which is equivalent to overtime and/or working "off the clock;" however, plaintiff as is the case with other officers received no pay for the hours worked.

## *ADDITIONAL STATEMENTS OF CLAIM*

23. During July 2006 Sgt. Podszus observed and allowed without corrective action Officer Rella commit an assault and battery upon the plaintiff illustrating his lack of supervisory ability and disdain for female employees. Only after Beale notified internal affairs were punitive measures taken against Rella.

24. During the investigation after the plaintiff filed her gender discrimination complaint, Joseph Pizzuti, Chief of Police, City of Mount Vernon, called plaintiff at home and stated in a belittling and scornful manner, "Why are you being such a pain in the ass?"

25. The actions that befell the plaintiff were made aware to management by an MV-5-Officers Report.

26. The Code of Conduct, Policy on Sexual Harassment revised 1/15/99 by the Mount Vernon Police Department was flagrantly ignored. The City of Mt. Vernon did not commence a timely and thorough investigation violating plaintiff's constitutional rights.

27. The code of conduct procedure page 3: "Any person who feels that he or she has been the victim of sexual harassment or has witnessed such activity is required to immediately report the incident to his/her supervisor or any other managerial employee." Sgt. Podszus observed and allowed discriminatory comments and allowed assault by P.O. Rella and failed to immediately report the incidents to his supervisor.

28. The Equal Employment Opportunity Statement issued on January 1, 2007 and signed by Ernest D. Davis, Mayor, was ignored.

29. Had plaintiff not been subjected to the violations of the ADA, Title VII, 42 U.S.C. §1983, and the Fourteenth Amended, <u>plaintiff would have delayed her retirement</u>.

30. As a direct result of Defendant's actions, Plaintiff has suffered and continues to suffer anguish; financial loss, including, but not limited to loss of income and pension benefits; and other incidental and consequential damages and expenses.

WHEREFORE, plaintiff prays that the Court:

a. Issue a permanent injunction enjoining the defendant from continuing or maintaining the policy, practice and custom of denying, abridging, withholding, or conditioning the rights of employees on the basis of race and disability which rights are secured by the ADA and Title VII.

b. As a result of the policies, procedures, practices, and acts of defendants, Plaintiff, Vivian Beale, has suffered violations of her rights, privileges, and immunities under the Constitution and aforementioned statutes and has and continues to suffer physical injury, medical expenses, severe emotional, psychological and financial distress, anguish, humiliation, embarrassment, anxiety, and pain and suffering due to the willful, wanton, and deliberate misconduct of the Defendants in connection with the deprivation of her constitutional and statutory rights guaranteed Fourteenth Amendment of the Constitution of the United States, protected by 42 U.S.C. §1983, the ADA, and Title VII.

c. Award plaintiff a judgment against defendant in whatever amount.

d. Award plaintiff actual damages for loss of wages in an amount to be fixed upon inquest and based upon the difference between total compensation plaintiff would have earned in the absence of this illegal discrimination against him, and the total compensation and/or benefits actually earned compensation plaintiff would have earned in the absence of this illegal discrimination against him, and the total compensation and/or benefits actually earned.

e.  Award plaintiff the costs of this action, together with reasonable attorney's fees as provided in Title VII.

f.  Grant such other and further relief, as may be necessary and proper.

Respectfully submitted,

April 8, 2008

*[signature]*
Sanford A. Kutner (SK6525)
Attorney for the plaintiff
6 Tara Place
Metairie, LA 70002
718-246-0433  FAX 866-613-6209

CERTIFICATE OF SERVICE

I certify that this Amended Complaint was served upon all counsel of record by FAX and a summons will be sought from the Clerk and a copy of the Complaint and Summons will be sent to Counsel of Record.

*[signature]*
4/8/ov